Good morning. The first case on our call this morning is agenda number 14 case number 1 0 4 6 0 3 in race Sophia G.L. This is John Lindeman et al. Mr. Franklin, are you ready to proceed? May it please the court, your honors, counsel, my name is Matthew Franklin and I'm the attorney representing Mr. Andrew Cochran. The issue to be decided by the court today is whether the Illinois trial court properly refused to register an Indiana custody order. In today's oral argument, I would like to focus on the issues of service of process, the related issue of jurisdiction, and the requirement of communication between the Illinois and Indiana courts under the Uniform Child Custody Jurisdiction and Enforcement Act. Whenever there's a dispute in the jurisdiction on a child custody case. These are the same issues, these are the same grounds that the trial court here in Illinois found in favor of my client. These are the same issues and the same grounds on which Justice Myerscough based her dissent in the appellate court. In this case, Andy and Alexis met at the Job Corps camp in Indiana. Subsequently, she became pregnant with Sophia. They continued to live in Indiana and then sometime about the third month of her pregnancy, sometime after the third month of the pregnancy, she and Andy moved back to Illinois where they remained until just about the time the baby was due. She returned to Indiana on her own and she gave birth to Sophia in Indiana. She spent the next ten days living with her mother and then she moved in with her father and with her stepmother, with father and stepmother, and spent the next six months, a little more than the next six months, with them. Then, on March 30th, 2006, Alexis decided to return to Illinois with Sophia and move in with Andy Cochran. Five days later... Let me just ask you about... Yes. Just a couple of facts about... Sure. That move back, move to Illinois. Did she leave in the still of the night or did she just say she's leaving, she's going to Illinois? Are there any facts in the record? There's no facts in the record that I'm aware of as to the time of the... that she left. Was her authority to take the child from Indiana questioned at all by the father? By the father? By her father? By her father. By her father? He did try to keep the child because there's evidence that Alexis had to go get police help to get the child at that point and then she left for Illinois. Okay. Yes. On April 4th, five days later, the Lindemans filed a custody petition. The Lindemans are the grandparent and step-grandparent of Sophia, filed a custody petition seeking custody of Sophia in Indiana. They claim the right to custody as de facto custodians, classification for which there is no exact parallel in Illinois. Five days later, on April 9th, John Lindeman, the father, came to Illinois and served his daughter with summons, served his daughter with a petition. Was Indiana the child's home state? The child was Indiana. Indiana is the child's home state. The child was there for just barely past six months, which is the definition of a home state. Was all of those six months spent at the same location? I think you said about 10 days was with some other location before. Right. She moved with her father. I believe it's uncontradicted, Your Honor, that she was with the Lindemans for just over six months. The child was born on September 14th. She left March 30th. Yes. So maybe a couple days over six months. Right. Although the complaint alleged that Andy Cochran was the putative father and Sophia was his daughter and that he and Andy, that Alexis and Andy and Sophia were all living in Illinois, no one served my client, Andy Cochran. As a result, two days later, there was a hearing in Indiana. There was a hearing in Indiana, and the trial court in Indiana awarded custody of the child to the Lindemans. Excuse me, Counsel. At the time the petition was filed, had he been declared to be the father of the child? No, Your Honor. You are correct. He was a putative father at that point. Thank you. Okay. Counsel, just so I'm clear on this, you indicate that the pleadings filed by the grandparents did identify him as the putative father? As the putative father. And, in fact, that comes to part of my argument here, is that under the Indiana Uniform Child Custody and Jurisdiction Act, it requires that all parties must receive notice of the custody hearing. Now, who are these parties under Indiana law as laid out in this statute? First, persons entitled to notice under Indiana law as in any custody proceeding between residents of Indiana. Second, a parent whose parental rights have not been terminated. And third, any person having physical custody of the child. I'd like to turn to that third one first. Any person having physical custody of the child. The verified complaint filed in Indiana said that Alexis and my client, Andrew Cochran, and Sophia, were all living as a nuclear family in Illinois. Counsel, if I may. Yes. Are there any other evidentiary matters we might look at for to determine whether the father had custody of the child, other than the fact that they lived in the same home? Support, care, whatever it might be. We do not dispute that Mr. Cochran was unemployed at the time and did not support the child up until that point. He did have visitation with the child on at least two occasions. And on one of them, Your Honor, although the counsel in its briefs called it a brief visitation, it was a very brief five-day visitation where the child came with him. Was this before the child moved to Indiana? This was while the child was living in Indiana with the Lindemans. But the punitive father lived with the child in his parents' home in Illinois. In Illinois. And my question is, is during that period, other than the fact that the child and Andrew lived in the same home, has there been any other allegations of support for the child or of custody of the child, whatever that might be? Just that he had custody for the five days during the time that he had visitation, Your Honor, over that Thanksgiving period. So I understand that was before the Illinois period, though. That was while the child was still in Indiana? Yes. Okay. But I'm really talking about while the child was living in Illinois. Oh, I'm sorry, Your Honor, I misunderstood. Other than the fact that they lived in the same home, was there any other allegation as to why this father should have been treated as a custodian of the child? I may even put the question another way. Is the fact that they live in the same home alone sufficient to prove the point? I believe that it is. When they hold themselves out to be a nuclear family, that he's the father, Sophia is the child, and the mother has come to live with him, and they move in. Obviously, by virtue of living in the same house together, she no more had a job than he did. He or his family is providing for that child and has been providing for the child for two years ever since. Andrews, the paternity wasn't established until after the Lindemans filed their action. Isn't that true? That's correct. The hearing and order in Indiana, which is the basis of the registration, was completed apparently in the morning of April 11th. The paternity declaration was made sometime after that. We don't know what times it was, but we acknowledge that the Illinois court already had information from the Indiana court as to what was happening over there at the time. But you're saying that he was still entitled to notice, even though the paternity wasn't established until after the time of the filing of the action? That's correct, Your Honor. On what basis? That he was the person that had physical custody of the child together with the mother while they are living in Illinois. Well, the mother's or the father's parents were the people that lived in Illinois. Is that correct? Correct. All right. And they were living in the home at the same time as their son and the mother and the child? Yes. Okay. I may have interrupted you at just the wrong time now that I think about it, to give you a chance to get back on track. In the determination of whether or not the father was entitled to notice on the date in question, one argument, of course, is that the child was in his custody in Illinois. But I think the other one was that as long as the parties were aware of the fact that he was apparently the natural father or the presumed natural father, would that fact alone require that he be given notice of this hearing in Indiana? I'm not entirely sure, but I don't think that factor alone, if he was not living and did not have custody of that child and did not have a relationship at the time that the petition was filed, then I think that there might not be a basis to name him a party. But in this case, the evidence is overwhelming that they knew exactly what was going on in Illinois, who was in that household. There's a great deal of testimony, and it's in the verified complaint, Your Honor. I would also note that a parent whose parental rights have not been previously terminated is also entitled to notice, although that gets into the very thing that we've been talking about, what's the relationship of the putative father. But he is a parent, and his parental rights had not been previously terminated. Let me kick you off track again. We've focused so far on the father of the child in terms of the custody issue. But while the child was in Indiana, the mother was in the household with the child. I'm trying to struggle to find out how a determination could be made that the grandparent had custody when the mother is in the household. During the whole six months, the child was in Indiana. What were the facts, if you have any, that shows that the grandmother or the grandfather controlled every movement of this child, and you can put a proper determination of custody? That is a very serious problem, Your Honor, because in our situation, they're claiming that they had primary custody of this child and that they provided the financial support. We don't argue anything about the financial support. However, both the Lindemans work, and during the day, Alexis, by the testimony from the April 11th hearing, was taking care of that child. She also exercised custody by getting the police involved to get her child back from the Lindemans. The Lindemans base their claim on the fact that they did more of the work after they got home from work, okay, and that Alexis was not a capable parent. The problem with that argument is she may not, if she was such an incapable parent, why were they leaving her, leaving the baby with the mother every day that they were at work? To be fair, Mr. Franklin, though, this case is before us, and whether or not Illinois should register an Indiana child custody order, right? That's correct, Your Honor. So those facts were put before the Indiana court and argued there, and that's the merits, and I understand your position. I imagine there's a contrary position at the other table, but is this court left with deciding that, or is this court left with the registration argument only? I would hook it in this way, Your Honor. There's an issue about, we don't dispute that the home state was Indiana, okay, but at the time, irrespective of where they were living and what the living conditions were, at the time that that petition was filed, mother, father, and baby were in Illinois. If they were not de facto, if, in fact, as a matter of law, they are not de facto custodians of the child over in Indiana because the primary custodian was Alexis, then there is no party left in Indiana for Indiana to give to assert its jurisdiction. Okay, so that goes into the 305D argument with respect to the act? That's correct. Namely that, and there are only three ways to not have this order registered in Illinois. One is what you said, that the Indiana court didn't have jurisdiction, and that's how you would argue that, right? That's correct. And I don't think there's any, the facts don't present itself in a way that the Indiana court had vacated state or modified the order, so that one's off the books. That's off the books. We don't allege that at all. And then your third argument, that Andrew was entitled to but did not receive notice based on this perceived custody. Yes, Your Honor. All right, were all those things raised in the complaint? In which document? Well, in your motion to, let me just get this here. The objection to the filing of the registration. Right. I don't think it's very clear in the paper that was filed, but I think it's more clear if you look at volume two where the oral arguments were held, that the very first thing out of the trial attorney's mouth who was representing Mr. Cochran was that there was no jurisdiction in this case, and later he talks about, much later he talks in the argument, he talks about the service problem very briefly. He just mentions it, but I think it's enough to raise the issue. And furthermore, I would point out that it was also raised. Let me just go over a few things that were raised in that paper. And tell me if any of these, standing alone, would be enough to not require Illinois to register the Indiana judgment. I believe what was raised was that the Lindemans lacked standing in Indiana. That was the argument that we just made, Your Honor, about the de facto guardian. If Indiana is the home state, you have to have a party in the home state. So that goes into the Lindemans' claim of de facto custodianship was based on false allegations? That's right. All right. Now, on this registration, would there be a hearing then on whether there were, what would this look like in the trial court? What happened in the trial court, covered in Volume 2, was that there was a, oral arguments made, Your Honor. There was no testimony presented. All parties were present. The Lindemans were there through their attorney. My client and Alexis. Alexis was there, which was a point I'd like to make. The appellate court, and I hope I'm, I don't want to get too far off of this, but the appellate court said that Alexis never objected to the registration. She was present, and I believe it's on page 12, or it's page 16 of the Volume 2. Her attorney objected to the registration of the order in Illinois as well. He joined in at the appellate level, and he joined in the PLA today. He chose to not argue, and therefore I am most thankful because it gives us the opportunity to, for the oral argument here. But that's the process that they went through, was that they had a law argument, a legal argument. Counsel, if I can, on this issue of whether or not the Lindemans were de facto parents. Yes. You're now suggesting to us, I think, that there's a factual issue on that, on whether or not they were de facto parents or not. Throughout the entire proceeding in Illinois, that is a factual issue which was raised by trial counsel repeatedly. Okay. Was there ever, on the de facto parent, there was evidence taken on that then at some point in Illinois? They submitted the transcripts of the Indiana hearing, Your Honor, so that they had that to rely on. Maybe I misheard you, but the Indiana hearing did not involve any testimony, involved only argument, is that what you said? No, the Indiana had testimony from Mr. Lindeman, Mrs. Lindeman, Kathy Engel, who is Alexis's mother. I think that was all, but there were three people who dealt with it. And I understand you may disagree with it, but is it a fair statement to say that the Indiana judge then made a finding of fact that the Lindemans were the parents, the de facto parents? Yes, Your Honor. Okay. How do we review that issue? Is there a standard of review that we have to apply in reviewing that factual finding? I believe that it would require that the evidence would be so overwhelming that it's a matter of law because it would be a collateral attack that is a matter of law based on the information there that could not stand. All right. Thank you. And your time is up, Mr. Frankel. I just want to say, though, the reason, and I think the reason for Justice Fitzgerald's questions, and while we're interested in the facts, the reason that 305D limits when an Illinois court is not forced to register an out-of-state judgment, in this case Indiana, is there's very narrow. In fact, there's three reasons, right? We really can't go into the facts. And the reason is because if we register it assuming that the other state has looked into the facts. What we can attack, Your Honor, is the service and the jurisdiction. Right. There's no question about that. Those are two of the bases. That's correct. All right. Thank you, Mr. Frankel. Thank you, Your Honors. Ms. Blackburn. May it please the Court. Counsel. My name is Michelle Blackburn, counsel for John and Yvonne Lindemann. The UCCJEA and the PKPA were enacted to resolve disputes between states regarding jurisdiction of cases involving child custody disputes. The purpose of both acts was to provide a uniform approach and recognition of the jurisdictional basis to be able to enter a custodial order. In this case, I represent the maternal grandparents of the child that is at the center of this dispute, Sophia Grace Lindemann. Alexis Lindemann is the mother of Sophia and has been, at best, a passive participant in this litigation. Alexis has had legal representation for the majority of this litigation. However, she has not filed any motions and she has made no arguments except to acquiesce to the arguments of Andrew's attorney. Andrew is the father of Sophia, and he has been represented throughout this litigation by Norbert Gettin. The application of the UCCJEA and the PKPA are the issues that are pending before this Court. The ruling of the trial court in this case is a complete and total disregard of the UCCJEA, as it is clearly written. The three most important elements of this case and the elements that I intend to address this morning are Section 305 of the UCCJEA, which outlines the procedure for registering a child custody determination and the elements that must be established by the party contesting the registration. The public policy goals sought to be achieved by the UCCJEA and the PKPA and the full faith and credit clause of the U.S. Constitution. I'm glad you mentioned the public policy goals because this Court, as the trial court, and in a way the appellate court, was faced with an out-of-state judgment that took away a child from the parents, right, Alexis and Andrew. And Sophia, they were the parents of Sophia, and that judgment was done in their absence. It's not the typical registration, right? Well, it is not the typical registration, and I don't think it's a fair statement to say that it was done in the absence of Alexis. The original hearing on April 11th of 2006, Alexis was not present for, although she had notice, and I don't think there's any question that she had notice of that proceeding, as an attorney called on her behalf to the Indiana court and attempted to obtain a continuance of that hearing. Judge Love, out of Indiana, was concerned about the fact that she was about to enter a custody ruling without the participation of Alexis, and so she entered an emergency temporary order and set it for an additional hearing on April 18th and demanded that, or ordered, that Alexis be present at that hearing. Alexis was present and testified at that hearing. Alexis also had a meeting with the guardian at Lytton, who was appointed by the Indiana court, either just prior, I believe just prior to that hearing. It was based on that evidence that day that Judge Love made the determination that, indeed, the Lindemans were the de facto custodians of Sophia and that she felt that the situation was such that the temporary custodial arrangement should stay in place. Also, it's important to note, on that date, that April 11th, 2006 hearing, Alexis testified at that hearing under oath that Andrew was indeed the father of the child and that an order had been entered here in Illinois to that effect. From that point forward, Judge Love has made it, she made an order on April 18th of 2006 that Andrew is to be notified of all proceedings that follow that proceeding. So once he was determined to be the father, to the satisfaction of the Indiana statute, since that point in time to this point in time, he has always been notified of every proceeding that has been going on in this case, not only in Illinois, but, of course, in Indiana. Section 305 of the UCCJEA clearly states that a court shall confirm the order in question unless the person contesting registration is able to establish that the issuing court did not have jurisdiction under Article II, that the child custody determination sought to be registered has been vacated, which Mr. Franklin has already addressed is not an issue in this case, or that the person contesting registration was entitled to notice, but notice was not given in accord with the standards of Section 108 in proceedings before the court that issued the order for which registration was sought. Now, before analyzing those factors, I believe it's important to note, as it was noted by the Illinois Appellate Court, that, first and foremost, the burden of proof in going forward on a contest to registration is on the person challenging the registration, in this case, Andrew. Alexis, Mr. Franklin has stated that Alexis has been an active participant in the contest to the registration, but if you review the file, Alexis has never once filed a pleading in this case, even though she has been represented by counsel for the majority of the proceedings. So, if that qualifies Alexis to be an active participant in this case, I find it hard to believe that that could be accurate. She has, at no time, challenged in Illinois, on her own, any of the things that were going on in the Illinois case. Now, they did originally, Alexis did originally, at the April 18th hearing, have an attorney in Indiana who challenged jurisdiction and service of process in Indiana. That argument was made by her attorney over there. I believe Judge Love asked that the argument be briefed, or that the positions be briefed. They were briefed, and after being briefed, Judge Love determined that she did not believe that service of process was insufficient, and she believed that she had jurisdiction over Alexis to keep the child custody case in Indiana. Now, it is also- Can we return to the failure to give notice to Andrew early on? First of all, how deep were we into the proceedings when Judge Love recognized Andrew as the father and insisted that he have notice of subsequent hearings? What had gone by before that happened? What had gone by prior to that is, in Indiana, there had been the verified emergency petition for custody. There had been the original April 11th, 2006 hearing on that, where Mr. Lindeman testified, Ms. Lindeman testified, and Alexis Lindeman's mother testified. And then, over here, we had the April 11th petition to establish Andrew as the father, and a determination later that day that he was indeed the father of the child. And then, procedurally, the next thing that I believe happened was the April 18th hearing over in Indiana, where Judge Love determined him to be the father. All right, and that was a period of- About seven days. About seven days. Right. My question to you is, even assuming, and for purposes of this question only, that Andrew was entitled to earlier notice than he actually received. Is the fact that he received the latest notice, was that sufficient, and was the failure to give the earlier notice a de minimis error? First, I do not believe he was entitled to notice. I began my question with that understanding. I didn't expect you to admit that. Right. My question is, even if we decide, no, he was entitled to notice at that earlier date, would you still win because the fact of the matter is he was in a position to receive notice seven days after that? Oh, I think definitely, and I don't think that Andrew can even argue that he did not have actual notice of what was going on in this case. Mr. Franklin admits and states that Alexis came over to live with Andrew. Can we just ask you this? Sure. The testimony that was heard in that seven-day window, the two Lindemans and the mother of Sophia, was that evidence repeated at some later date? No. And the ultimate decisions that were made in this case were based at least in part on that evidence? They were based in part on that evidence and in part on the testimony of Alexis at the April 18, 2006 hearing. But the fact of the matter is, for whatever reason, Andrew was not given notice for that particular hearing at which this testimony was taken? Andrew was not given notice, but I think the facts establish that Alexis did not have transportation to the state of Indiana for the April 18, 2006 hearing. So transportation was provided by Andrew's family. So for Andrew to state that he did not have notice of what was going on in these proceedings is disingenuous. He had notice from the very date that Alexis was served. I think that's pretty much what Andrew's going to say on the other side of the argument, that the Lindemans knew from the very first moment that Andrew was connected to this case. But this is the problem, as I see it, with that issue, is for anyone who practices family law, there is an understanding that just because a mother, in this case Alexis, is saying that someone in particular is a father to a child and biologically connected to that child is not necessarily the truth at all times. That's why there is a procedure, both in Indiana and in Illinois, for establishing yourself as the father of a child. Up until that time, anyone could come in and claim that they're the father of the child. If we were required to give notice to everyone who we believed may have been the father of this child in Indiana, we could be giving notice to multiple parties and including multiple parties into this case.  I certainly understand your argument is that he wasn't entitled to notice at that period. He was only entitled to notice after the court finding. That's correct. Okay. That's correct. So did he get any notice of the April 18th hearing? The only notice that he received of the April 18th hearing would have been via Alexis, by the nature of the fact that Alexis was living with him, and therefore he had notice because they were living in the same residence and his family brought her to Indiana. So he had notice that there was a proceeding going on affecting Sophia. Thank you. Okay. Counsel, sorry to interrupt you again, but opposing counsel indicated that your pleadings in Indiana were verified pleadings and it contained an allegation that he is or was at the time of the pleading the putative father. If that is correct, I'd like you to tell me if it is or not. Did he, based on that, under Indiana law, was he obligated to get a notice? More than an actual notice. I mean legal procedural notice. First, I believe what the, if my recollection serves me, what the verified emergency petition stated was that indeed he was the, I don't think it made an allegation about him being the alleged father, but it did make an allegation, something to the effect, that Alexis had left the state of Indiana to live with the alleged father. So, yes, they do allege that he is the father, but I think the problem with that is I still don't think that he is entitled to any notice, specifically under the Indiana Code, because the Indiana Code states there are only two ways to establish your paternity as a father, and one is by signing one of their paternity affidavits, and the other one is by filing an actual legal proceeding and having it determination by an Indiana court that you were indeed the father of this child. Up until that is done, I don't believe in Indiana he's entitled to any notice of any proceedings that are going on involving this child under the Paternity Act or under their family court system. The Illinois Appellate Court limited the issues that they addressed in their opinion to these three basis for contesting registration, and the position of the Appellate Court was Andrew was not able to establish, since it was his burden of proof, it was his obligation to establish, any of those basis for contesting the registration. Specifically, Andrew never argued that Indiana did not have home state jurisdiction. I don't think there has ever been a dispute in any of the proceedings that Indiana is not the home state of this child. Judge Day, the original judge that heard the petition to establish paternity, acknowledged that there was a proceeding pending in Indiana, and Indiana appeared to be the home state of the child. Judge Bell has since then indicated that, yes, indeed, Indiana is the home state of the child, and it would require them declining their jurisdiction in order for Illinois to take jurisdiction of this case. Also, Andrew asserts that he was not given notice, of course, of the Indiana proceeding, but a particular concern for the Appellate Court was that he failed to establish that he was ever entitled to any notice. Paternity had not been established, as I stated. Andrew and Alexis were never married. They're not living together at the time of Sophia's birth. Andrew was not present at the birth. The testimony is that Andrew only visited Sophia on two occasions in the first six-plus months of her life, and Andrew never signed a paternity affidavit. Andrew cannot establish, I do not believe, that he did not have notice of these proceedings. Alexis was living with him when he was served with notice of the hearing. A person from Andrew's attorney's office called Judge Love's office requesting a continuance on behalf of Alexis of that April 11, 2006, hearing. And a full hearing with Alexis' participation was held seven days after the entry of the emergency order. At that hearing, as I said before, Alexis challenged jurisdiction and sufficiency of process, and those challenges were denied. Now, Andrew, I don't believe that Andrew ever establishes that, or ever states that he has not received notice of all of the proceedings that have gone on in this case since the point in time that he was determined to be the father of this case. And I think even more telling about this issue of notice is Andrew has never attempted to adjudicate his rights enter an appearance, or challenge any of the rulings that have been entered by an Indiana court. Instead, he has chosen to make his exclusive forum the state of Illinois and challenge all of the proceedings that have gone on in the state of Illinois. He's never challenged jurisdiction over himself, over his child, or whether the case even belongs in Indiana, in Indiana. Instead, he has repeatedly asked this court, the trial court, the appellate court, and now the Supreme Court, to stand in judgment of the orders that were entered in Indiana. Andrew also, as we stated, challenges in his briefs on behalf of Alexis, stating that no notice has been, was, no sufficient notice was provided to her. And I think the appellate court was correct when it stated that the only person that has the right to challenge that is Alexis. And Alexis has never challenged that. Alexis has never challenged whether notice to her was sufficient or insufficient, except for her challenge in Indiana. Ms. Blackburn, is it your argument that since Andrew didn't challenge his jurisdiction in the Indiana court, he cannot challenge it in connection with the registration proceedings? No, I'm not saying that at all. I believe he can challenge it in Illinois as well. But what I'm saying is it appears to me that the more appropriate form to challenge all of these proceedings would have been in Indiana by virtue of the appellate process that was available, is available to him in the state of Indiana. My understanding is this is still a temporary custody order. There's still not been a final determination of anybody's rights in this case in the state of Indiana because the Indiana court has been waiting to see how this works its way through the court system here in Illinois. At the same time the proceedings were going on in Indiana, there were proceedings in Illinois, and there was an order entered giving the mother and Andrew custody of the same child. Is that correct? That is correct. Is the fact, and I think Mr. Franklin alluded to it in his opening statement, that he would touch on the failure of communication between the Illinois and the Indiana judges, and apparently, according to the record, there was a failure for the Indiana judge to respond. Does that have any effect on either the Illinois proceedings or the Illinois registration proceedings? I don't believe it does, and I don't believe it does because I believe that the way the communications portion of the statute reads is that the judges may communicate with each other. It does not say that Judge Love had to communicate. Judge Love obviously clearly felt like she had jurisdiction over this case, and there was no need for her to communicate. Irregardless of whether that... Although the statute does say shall immediately communicate. Right. I agree with that, but I don't believe that the Lindemans should be held accountable for the failure of Judge Love in this case to communicate with the Illinois court. I can only assume Judge Love felt like there was nothing that needed to be discussed and nothing that she needed to, nothing that she could hear from a judge in Illinois that would convince her that Indiana did not have jurisdiction over this case. The act envisions the possibility of two states that have jurisdiction over the case and the absolute necessity of the courts communicating so they can decide which of the two will voluntarily relinquish it. That's the whole purpose of the communication, isn't it? I believe that it is. In one state, and we're not making a finding here, but one state can just stymie that by not returning or not answering the phone? No, I am not suggesting that that was appropriate, and I'm not suggesting that was the way that the act envisioned that this should proceed. But what I am suggesting is I don't think the Lindemans should be held accountable for the failure of Judge Love to do that. As I said, I can only assume that Judge Love felt like because she had six months and Illinois had five days, she didn't have any issue for her as far as who was going to have jurisdiction over this case. I see that my time has expired. Do you anticipate there would still be a fight over jurisdiction if the registration was not allowed in Illinois? Would this case proceed in Indiana? Would it proceed in Illinois? I believe this case would proceed in Indiana. Regardless? Regardless. Only with a do-over on the service, right? Correct, yes. Thank you, Ms. Blakman. You're welcome. Just one fast question. Sure. Where's the child now? The child is currently here in Illinois with the mother and the father. He's been in Illinois all of this time? That's correct. My client's had no contact with the child since the day that she left to come to Illinois. The child is two years old? That's correct. Thank you, Ms. Blakman. Thank you. Mr. Franklin. Mr. Franklin, if I may. Sure. One of your really important arguments is notice, and it's clear now that there was notice sometime during the proceedings. Can you explain to me why the failure to have notice at the earlier part of the proceedings prejudiced your client? There's no evidence in the record that he was served with the notice at any time prior to the registration, Your Honor. The registration occurred in Illinois. When the registration occurred in Illinois. He's never received notice for any Indiana court proceeding? As counsel kept saying, he had actual notice. Really, so we understand, we're not talking about actual notice. We're talking about notice through the service of process. There's nothing in the record that shows that service of process was ever made on the client. There's a reference in the billing to it for June of 2006. Ms. Franklin, if we agree with your position, the trial court's position, the dissenting justice's position, that registration is improper in Illinois, where are we left procedurally? If there is no registration in Illinois, if registration is not allowed in Illinois, then I think that there can be, they either have to start over in Indiana  So there could still be an issue in flight as to which court is going to manifest jurisdiction in the case? It could, Your Honor, and that's what I wanted to address. I have one more question before you address that. Do you agree with Ms. Blackburn that if we agree with her position, the appellate court majority's position that registration is proper, that the parties will still have a time to argue their case, the parents will have a chance to argue because the only thing that's been honored is a temporary custody order? It's my understanding, having read the record many times, Your Honor. Okay. And indeed, the temporary custody right now of Sophia is with the Lindemans, is that right? There's a temporary, physical custody is here in Illinois. There is a temporary custody order from Indiana, yes. Is there still a temporary custody order in effect in Illinois granting Alexis and Andrew custody? That was actually vacated, Your Honor, prior to the, once the court, and this is where you raised the issue, Your Honor. I had a brilliant second half to my argument that I never got to, and it was about the communications with the judges. In the short time that I have, I would like to point, Your Honors, to the case of In re, L.C. from Kansas that said that communication is mandatory and it even rises to the level of jurisdiction, and that's In re, L.C., in a factual pattern that's very, very similar to this case. Mom, the court had wardship of the child, and mom had physical, the child had been returned to mom, but the court still kept custody of the child, and she slipped out and went back to Pennsylvania in a juvenile case. And even there, the Kansas court said, despite the fact that it's your, despite the fact that there is a wardship proceeding, that you've already declared that this is a ward of the court and so on, you have to contact the Pennsylvania case. And the failure to contact Pennsylvania, because it's mandatory, the failure to contact the Pennsylvania case in that case, or the judge in Pennsylvania, gives rise to, in the last two paragraphs, it says this is a jurisdictional question because the jurisdictional question was decided because there was no jurisdiction, because that contact was not made. All orders in this court subsequent to that were nullities. That's how strongly they felt. I would also point to, Your Honor, here in Illinois, a case which was cited in our PLA, and there was a major typo, but the case is In re, Joseph, V, D. And we gave that. It's a Second Circuit case which also said that it is mandatory for an Illinois court to contact the other courts any time there is a jurisdictional dispute. We called it In re, Joof, I think, J-O-U-P-H. But you will find it in the PLA. On June 16th, the Illinois courts entered an order declining further jurisdiction and vacating all prior custody orders, right? That's right. All right. So is the physical custody now with the Lindemans, Sophia's physical custody? No, physical custody is still with Mom and with Dad here in Illinois. The child is here. If we should rule against you, should we do anything in our order concerning the present custody of the child? I had not anticipated that question, Your Honor, and I'm not quite sure. Well, I'm certainly not either. I'm sorry. Thank you. Well, if we rule against you, then judgment becomes registered in Illinois. Judgment becomes registered. Then you would have the opportunity, would you say, I mean, there would have to be an evidentiary hearing because it's a temporary custody order, right? In Indiana. Right. But if the judgment's registered here, doesn't the hearing take place in Illinois? If it's registered here? Right. No. Excuse me, Your Honor, I don't believe that that's the case. That's the whole point. We'd love to have a hearing on the merits here in Illinois. So regardless, you're going to have to go back to Indiana at some point? If this court finds against my client, that is correct. If it doesn't, either Indiana has to start over or the Lindemans can come over here. What order are we working off of that has Sophia in the custody of the parents right now if the Illinois court vacated the temporary custody order? There is no custody order giving Alexis custody. There is a joint custody order that, well, that order would have been vacated, too. So this is just a baby? Mother and father are holding the baby because they are the parents of the baby. But there's an order in Indiana, right? Which is under attack here in Illinois. We have challenged the right to register that order. That's true. And the appellate court disagreed. How long has this been going on? Two years, Your Honor. Almost exactly. Okay. Last thing with Justice Carmeier, I would like to say that the court in Greene County went out of its way to attempt to contact the Indiana court, calling eight times, writing four letters, being told that the judge would respond from Indiana, and then no response from the judge in Indiana. In light of LC and in light of In re Joseph, VD, I believe that that is also reversible error. Any other questions? Apparently not. Thank you, Mr. Franklin. Thank you, Ms. Blackburn. Case number 104-603, In re Sophia, GL, is taken under advisement as agenda number 14.